## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MITEK SYTEMS, INC., a Delaware corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 12-462-GMS |
| ) | |
| UNITED SERVICES AUTOMOBILE ) | |
| ASSOCIATION (USAA), ) | |
| a Texas reciprocal inter-insurance exchange, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF MITEK SYSTEMS, INC.'S OPPOSITION TO MOTION TO DISMISS OR
TRANSFER TO THE WESTERN DISTRICT OF TEXAS**

*Pro Hac Vice:*

M. Craig Tyler, TX State Bar No. 00794762
ctyler@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas 78746-5546
Telephone:      512-338-5400

James C. Yoon, CA State Bar No. 177155
jyoon@wsgr.com
Ryan Smith, CA State Bar No. 229323
rsmith@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:      650-493-9300

Charles Tait Graves, CA State Bar No. 197923
tgraves@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone:      415-947-2000

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

**ATTORNEYS FOR PLAINTIFF
MITEK SYSTEMS, INC.**

**TABLE OF CONTENTS**

Page

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.     INTRODUCTION ........................................................................................................... 1

III.    ALLEGATIONS AND FACTUAL BACKGROUND .................................................... 2

        A.      The June 2006 License Agreement and Its Forum Selection Clause ..................... 2

        B.      The Parties' Dispute Centers on the 2006 License Agreement. ........................... 3

IV.     SUMMARY OF ARGUMENT ....................................................................................... 5

V.      MITEK'S COMPLAINT IS PROPERLY VENUED IN THIS COURT .......................... 5

        A.      The Parties' Delaware Forum Selection Clause Is Valid and Enforceable. ........... 5

        B.      All of the Parties' Disputes Involve the License Agreement ................................. 7

        C.      The License Agreement Governs USAA's State Law Claims. ............................. 9

                1.      USAA Attempts to Avoid the License Agreement ................................. 10

                2.      The License Agreement Governs USAA's Contract Claim. ................... 11

                3.      The License Agreement Governs USAA's Tort Claims .......................... 13

        D.      "First to File" Does Not Apply to Anticipatory Actions. ................................... 16

        E.      "First to File" Does Not Apply to Improperly Venued Actions. ......................... 18

        F.      The Case Law Undermines USAA's Convenience Argument. ............................ 18

VI.     CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

Page(s)

### CASES

*909 Corp v. Village of Bolingbrook Police Pension Fund,*
   741 F. Supp. 1290 (S.D. Tex. 1990) ..................................................................17

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) .......................8

*ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565 (D. Del. 2001)..........................................19

*Cambridge Filter Corp. v. International Filter Co., Inc.*,
   548 F. Supp. 1301 (D. Nev. 1982) ....................................................................16

*Caudill Seed & Warehouse Co., Inc. v. Brassica Protection Prod., LLC*,
   552 F. Supp. 2d 658 (W.D. Ky. 2008) ..............................................................18

*CentiMark Corp. v. Jacobsen*, 2011 WL 6000719 (W.D.Pa. Nov. 30, 2011)..............................19

*Clorox v. Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954 (E.D. Wisc. 2009) ...................16

*Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   795 F. Supp. 151 (W.D. Penn. 1992)..................................................................14

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
   2001 WL 1617186 (D. Del. 2001) .....................................................................19

*Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.*,
   753 F. Supp. 1566 (S.D. Fla. 1990) ..................................................................16

*Edifecs Inc. v. TIBCO Software Inc.*, 756 F. Supp. 2d 1313 (W.D. Wash. 2010) ..................14, 15

*EEOC v. University of Penn.*, 850 F.2d 969 (3d Cir. 1988) .................................................16, 17

*Excel Mktg. Sol., Inc. v. Direct Fin. Sol., LLC*,
   2011 WL 1833022 (N.D. Tex. May 13, 2011) ......................................................6

*Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir. 1991) ..........................................6

*Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352 (3d. Cir. 1986) .....................6

*Highlands Ins. Group, Inc. v. Halliburton Co.*,
   2001 WL 287485 (Del. Ch. Mar. 21, 2001)........................................................11

*ING Bank, FSB v. Palmer*, 2010 WL 3907825 (D. Del. Sept. 29, 2010) .....................................6

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ..............................................6

*Magnum Defense, Inc. v. Harbour Group Ltd.*, 248 F. Supp. 2d 64 (D.R.I. 2003).......................16

*Megadance USA Corp. v. Knipp*, 623 F. Supp. 2d 146 (D. Mass. 2009) ...................................18

*MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*,
    422 F. Supp. 2d 724 (N.D. Tex. 2006) ................................................................15

*National Biodiesel Bd. v. Futurefuel Chem. Co.*,
    647 F. Supp. 2d 1074 (S.D. Iowa 2009) ............................................................18

*Paragon Indus., LP v. Denver Glass Machinery, Inc.*,
    2008 WL 3890495 (N.D. Tex. Aug. 22, 2008).................................................17

*Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008) ............................8

*Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008) ...................................9

*Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Del. 2002)...................................................14

*Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95 (D. Mass. 2001) .........15

*Webcraft Tech., Inc. v. McCaw*, 674 F. Supp. 1039 (S.D.N.Y. 1987)...........................15

*Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215 (D.Del.1993)....................19

*Wolfe v. CareFirst of Md., Inc.*, 2010 WL 1998290 (E.D. Tex. Apr. 27, 2010) ...........6

## STATUTES

Del. Code § 6-2002 .......................................................................................................14

Del. Code § 6-2007 .......................................................................................................14

## MISCELLANEOUS

Restatement (Second) Conflict of Laws § 145, Comment.................................................15

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Rather than respond to Plaintiff Mitek's Complaint, Defendant USAA moved to dismiss or transfer this action to the Western District of Texas.  After a dispute arose, USAA filed for declaratory relief in San Antonio on March 29.  Mitek then moved to dismiss or transfer the Texas action to this Court based on the parties' Delaware forum selection agreement.  USAA responded by moving in Texas to enjoin this lawsuit.  Those motions are pending.  Here, Mitek opposes USAA's motion, based on the parties' Delaware forum selection clause.

## II.     INTRODUCTION

Should a party to a sophisticated business contract be permitted to avoid the forum in which it agreed to litigate and instead rush to file an anticipatory lawsuit to try to get a hometown jury?  The answer is plainly "no," and that is why Mitek requests that the Court deny USAA's motion to dismiss or transfer this action.

Indeed, this lawsuit is in the right place—the place the parties specified in their June 2006 Software License Agreement ("License Agreement") as the exclusive forum for disputes arising from the terms or obligations of that contract.  This controlling contract requires a Delaware forum and a Delaware choice of law.  Choosing a Delaware forum was a sensible decision by two sophisticated companies, because Delaware provides a highly-regarded forum for technology disputes and also gives neither party a perceived hometown advantage.

Mitek properly filed its lawsuit for patent infringement and breach of the License Agreement in this Court, because all of the parties' disputes are related to the terms of, and obligations arising from that contract.  The lawsuit should remain here, for several reasons:

● **Mitek Has Moved to Dismiss the Texas Action**:  First, Mitek has moved to dismiss or transfer USAA's Texas action, and that motion remains pending.

-1-

- **"First to File" Does not Apply**:  Second, that USAA filed first in Texas is irrelevant. Courts reject the "first to file" rule in cases like this one, where (1) a forum selection clause mandates litigation in the second-filed location, and (2) the true defendant filed an anticipatory, declaratory relief action to deprive the true plaintiff of the proper forum.

- **The Delaware Forum Selection Clause is Enforceable**:  Third, USAA's acrobatic efforts to evade the Delaware forum selection clause cannot overcome the strong presumption in favor of such clauses.  The License Agreement provides the forum (and the choice of law) for all contract and tort claims that either party has alleged, here or in Texas.  Moreover, USAA's license-based defenses to the patent infringement claims explicitly require that the scope of the License Agreement be interpreted.  That can take place only in this Court.

- **USAA's Proposal Would Result in Two Actions**:   According to USAA, Mitek should be required to bring its contract claims in a separate Delaware action in state court, and the patent claims and USAA's own contract-based claims should be heard in Texas.  That would needlessly create two actions.  Mitek's solution—based on the controlling contract—would result in a single action, before this Court.  There is no principled basis for USAA's position.

- **USAA's Convenience Arguments are Outdated**:  Finally, USAA's arguments about convenience are one-sided and outdated.  Litigating in USAA's hometown instead of the parties' chosen, neutral forum is not convenient for San Diego-based Mitek.  More important, and as the courts have recognized, advances in technology have rendered irrelevant any argument that the location of evidence should determine venue.

## III.    ALLEGATIONS AND FACTUAL BACKGROUND

### A.    The June 2006 License Agreement and Its Forum Selection Clause.

In June 2006, Mitek licensed technology to USAA under the License Agreement.  The License Agreement contains a mandatory forum selection clause:  "any suit or action filed to

enforce or contest any provision of this Agreement, or the obligations imposed, shall be brought and prosecuted in a court of competent jurisdiction sitting in the State of Delaware." *See* Ex. 1 ¶ 15.[1] It likewise contains a Delaware choice of law clause. *See id.*

The License Agreement also sets forth a comprehensive, multi-part section on "Confidentiality" under which the parties described what types of information would be confidential, what exceptions would apply, specific security terms, and mutually contemplated that they would disclose confidential information to one another and mutually owe one another an obligation to protect and not misuse such information. *See id.* ¶¶ 16.1-16.6.

The parties further agreed to an integration clause stating that "[t]his Agreement evidences the complete understanding and agreement between the parties and supersedes any prior understandings or agreements." *See id.* ¶ 17.2.

One month before, the parties entered into a short-lived May 2006 contract with a Texas forum selection clause. Ex. 2 (Texas Complaint) ¶ 17. As USAA alleged in its Texas Complaint, the parties met then for USAA to explore the opportunity to license technology from Mitek. *Id.* ¶¶ 16-17. The May 2006 contract recited that its limited purpose was to permit exploration of that opportunity. Ex. 3 (Amended Texas Complaint) at Exhibit L ¶ 1.1. The May 2006 contract was then superseded by Section 17.2 of the June 2006 License Agreement.

### B.      The Parties' Dispute Centers on the 2006 License Agreement.

In late 2011, Mitek informed USAA that, under the License Agreement, USAA was about to exceed the maximum allowed number of transactions. *See* Complaint ¶ 21. USAA ignored this warning and exceeded the number of transactions. USAA then delayed sending a required usage report and provided inaccurate numbers. *See id.* In March 2012, USAA finally

---

[1] "Ex. __" refers to exhibits in the supporting Declaration of Charles T. Graves.

provided a report showing that it was violating the License Agreement, and further informed Mitek about its unlicensed (and thus infringing) product for mobile deposit of checks.  *See id.*

Rushing to file first, USAA filed a declaratory relief lawsuit on March 29, and sought (1) a declaration of non-infringement, alleging in part that the License Agreement allows USAA to use Mitek's patented technology; and (2) a ruling that it paid too much under the License Agreement.  *See* Ex. 2  ¶ 41 ("USAA's use of the Mitek software, pursuant to a licensing agreement, does not infringe upon any valid claim of the Asserted Patents."); ¶¶ 79-87.

USAA also alleged that it is the true inventor of Mitek's patents, claiming that it disclosed confidential information to Mitek in 2006 and 2007 that Mitek then incorporated into a January 2008 patent application that is the basis for the patents-in-suit.  To raise this defensive argument, USAA did not sue under the License Agreement's confidentiality terms.  It instead sued under the parties' short-lived May 2006 contract—the agreement that had allowed USAA to explore the license opportunity, and that was superseded by the License Agreement.  *See* Ex. 2 ¶¶ 17, 22.  USAA did so to try to evade the Delaware forum selection clause.

On April 16, Mitek moved to dismiss USAA's Texas action because (1) USAA's declaratory relief claims require an interpretation of the scope of the License Agreement; and (2) the dispute about confidential information is governed by that contract.  USAA hastily filed an Amended Complaint to obscure the forum selection clause.  It removed the License Agreement as an exhibit, dropped the claim about amounts owed, and omitted paragraphs relating to the agreement.  *Compare* Ex. 2 ¶ 80 (attaching contract as "Exhibit U hereto"); ¶¶ 79-87 ("Count VII – Reimbursement); ¶ 32 (referring to Software License Agreement); *with* Ex. 3.

USAA still alleges that it may use Mitek's patented software "pursuant to a licensing agreement."  *See* Ex. 3 ¶ 35.  USAA also still alleges that Mitek took confidential information

and placed it into a January 2008 patent application. Mitek renewed its motion to dismiss or transfer the Texas action on April 25 because the License Agreement governs these disputes. *See* Ex. 4 (Renewed Motion to Dismiss Texas Action).

## IV.    SUMMARY OF ARGUMENT

1.    Because the parties agreed to litigate disputes involving the terms of, or obligations arising from, their License Agreement in Delaware, Mitek's lawsuit in this Court is properly venued. This venue is a rationally chosen, neutral forum where neither party gets the potential advantage of a hometown jury. USAA's proposal would result in two different litigations; Mitek's contract-based proposal would result in a single action for all disputes.

2.    An examination of Mitek's claims against USAA, USAA's defenses, and USAA's claims brought against Mitek shows that all of them require an interpretation of the License Agreement and/or are governed by the License Agreement and Delaware law.

3.    The "first to file" rule does not apply (a) when a forum selection clause mandates litigation in a different forum; and (b) when the first-filed action is a defensive, declaratory relief action. Both exceptions apply here.

4.    USAA's self-serving argument that litigation in San Antonio would be more "convenient" for USAA is outdated and one-sided. Given electronic discovery and other technologies, the location of evidence does not matter when determining venue.

## V.    MITEK'S COMPLAINT IS PROPERLY VENUED IN THIS COURT

### A.    The Parties' Delaware Forum Selection Clause Is Valid and Enforceable.

The parties agreed to Delaware law and a mandatory Delaware forum for any disputes that involve the terms of, or the "obligations" arising from, their June 2006 License Agreement. USAA is attempting to evade that forum selection clause. Thus, the central inquiry on this

motion is whether USAA can breach the License Agreement and force this lawsuit to take place in its hometown instead of this Court.

To begin with, forum selection clauses are presumptively valid. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) (forum selection clause entitled to substantial consideration); *ING Bank, FSB v. Palmer*, 2010 WL 3907825, *1 (D. Del. Sept. 29, 2010) (forum selection clauses are *prima facie* valid). Such clauses are rigorously enforced unless the moving party makes a "strong showing" that the contract was the result of fraud or overreaching, or that the chosen forum is so "gravely difficult" and inconvenient that the party will lose its "day in court." *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991); *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 359 (3d. Cir. 1986).

USAA does not and cannot argue that these exceptions apply. Moreover, courts in USAA's home state readily enforce forum selection clauses that result in cases being heard elsewhere. *See, e.g.*, *Excel Mktg. Sol., Inc. v. Direct Fin. Sol., LLC*, 2011 WL 1833022, *5-7 (N.D. Tex. May 13, 2011) (dismissing case; directing plaintiff to re-file to comply with Delaware forum selection clause); *Wolfe v. CareFirst of Md., Inc.*, 2010 WL 1998290, *5 (E.D. Tex. Apr. 27, 2010) (Maryland forum selection clause "does not contravene Texas public policy").

The sole reason USAA filed suit in Texas was a hope that it would have a perceived hometown advantage as a local company because many Armed Services members residing in the San Antonio area use USAA's insurance and banking offerings. This is ***not*** a valid basis for avoiding a forum selection clause. There is no authority whatsoever for the proposition that a perceived hometown advantage permits a party to nullify its forum selection clause.

Because USAA does not contest the enforceability of the forum selection clause, the sole remaining questions are (1) whether the parties' disputes relate to the terms and obligations of

the License Agreement; (2) whether USAA gets the benefit of the "first to file" rule; and (3) whether USAA can avoid the forum selection clause based on a one-sided "convenience" argument. USAA's positions are wrong on every point.

### B. All of the Parties' Disputes Involve the License Agreement.

All of the parties' disputes relate to the terms and obligations of the License Agreement, both here and in the Texas action. USAA does not discuss these issues in any detail in its motion because its efforts in Texas to plead around the License Agreement are so transparent. But it is important to review why every claim either party alleges against the other involves the License Agreement. First, and most obviously, all of the parties' disputes about whether USAA owes Mitek money under that contract, whether USAA exceeded the permitted number of transactions under that contract, and whether one or both parties violated the confidentiality terms of the contract must be litigated in Delaware, under Delaware law.

USAA admits as much, and argues that Mitek should be required to file a separate, second lawsuit in Delaware state court to litigate whether USAA owes money under the License Agreement. *See* Motion at 11-13. Meanwhile, without acknowledging the contradiction, USAA argues that it would be wasteful if two different courts heard the parties' disputes, and that the Delaware and Texas actions should be consolidated in Texas. *See id*. at 8-9. The obvious rejoinder to this inconsistent argument is that consolidation in this Court of ***all*** the parties' disputes is the only way that all of those disputes can be heard together. Any other possibility results in one or both parties violating the Delaware forum selection clause.

Second, the patent claims belong in this Court because Mitek's infringement claims and USAA's defenses require that the Court interpret the scope of the License Agreement. USAA openly alleges in its Amended Texas Complaint that it did not use Mitek's patented technology

outside the terms of the parties' "licensing agreement." *See* Ex. 3 ¶ 35.   The only licensing agreement between the parties is the License Agreement.   Further, USAA asserts that any claim of patent infringement against USAA   "is barred by the doctrine of implied license." *See id.* ¶ 36.   Thus, by USAA's own allegations, a court must necessarily analyze the obligations of the License Agreement to determine whether USAA's use of patented Mitek software is expressly or impliedly licensed.   USAA cannot argue with a straight face that the Western District of Texas is permitted to engage in that interpretation under the Delaware forum selection clause.

The same is true for USAA's other defenses to Mitek's patent claims (laches, waiver, estoppel, and exhaustion) asserted in the Texas complaint.   All are licensed-based defenses that hinge upon the provisions and obligations of the contract.   Laches focuses on the reasonableness of the patent holder's delay in filing a suit for patent infringement.   *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028-29 (Fed. Cir. 1992).   Estoppel focuses on what the accused infringer has been led to reasonably believe about its infringement by the patent holder.   *See A.C. Aukerman*, 960 F.2d at 1045-46.   Waiver involves a patent holder's intentional relinquishment of its rights to enforce its patents.   *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019-22 (Fed. Cir. 2008).

Each of these defenses turns on the parties' interpretations of the scope of the License Agreement.   Indeed, USAA alleges in Texas that "Mitek was fully aware that USAA was using RDC applications involving the use of imaging devices" and that "Mitek remained silent for an inexcusably long period of time, while Mitek had a duty to inform USAA that Mitek was obtaining the Asserted Patents and that it would assert those patents against USAA."   *See* Ex. 3 ¶¶ 41-42.   Mitek's interpretation of the scope of the License Agreement may fully explain any purported delay by Mitek in asserting its patent rights.   Likewise, whether Mitek misled USAA

regarding Mitek's patent rights or whether Mitek relinquished those rights is contingent upon whether the License Agreement covered the patent rights at issue here and the parties' interpretation and communication regarding the relevant provisions and obligations.

Patent exhaustion—whether an initial authorized sale of a patented item terminates all patent rights to that item—is also intertwined with the provisions and obligations of the License Agreement. *See Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008) (explaining concept). Determining patent exhaustion turns on whether any component in USAA's accused software was covered by the provisions and obligations of the License Agreement.

And while USAA argues that some of its boilerplate patent defenses do not involve the License Agreement, USAA cannot deny that its other defenses require interpretation of the License Agreement. Moreover, USAA did not file these defenses "first" – it added them only after Mitek filed in this Court and moved to dismiss in Texas, in an unsuccessful effort to obscure the License Agreement through an amended pleading.

USAA's other patent arguments are even more directly entangled with the License Agreement. USAA alleges in Texas that the inventorship of Mitek's patents should be corrected and that Mitek engaged in inequitable conduct because Mitek supposedly took confidential information from Plaintiff and put it into a January 18, 2008 patent application. *See* Ex. 3 ¶¶ 38, 44, 50. By definition, such claims cannot be resolved before the reviewing court or jury first determines whether or not Mitek violated its contractual confidentiality obligations to USAA— obligations set forth in the License Agreement.

### C.     The License Agreement Governs USAA's State Law Claims.

In Texas, USAA endeavors mightily to ignore the License Agreement and pretend that the parties' dispute turns on three minor contracts that have nothing to do with the issues in

question, but have Texas forum selection clauses.   But there are gaping holes in USAA's pleading efforts.  All of these claims must be litigated in Delaware, under Delaware law.

### 1.      USAA Attempts to Avoid the License Agreement.

In Texas, USAA alleges that Mitek misused trade secrets that USAA allegedly disclosed to Mitek starting in 2006 by incorporating them into a patent application that Mitek filed on January 18, 2008.  *See* Ex. 3 ¶¶ 24-25.   USAA also alleges that Mitek violated the parties' contract by stating publicly that Plaintiff's licensed technology from Mitek "[i]n 2006."  *See id.* ¶¶ 71, 85; *id.* at Exhibit Q at page 14.  According to USAA, the parties agreed to forum selection clauses calling out Texas law and never intended otherwise.  *See id.* ¶¶ 5, 17.

In support of this contention, USAA alleges that the parties entered into nondisclosure agreements calling out Texas law—and attached contracts executed in May 2006, February 2008, and April 2008.  *See* Ex. 3 ¶¶ 17-18; *id.* at Exhibits L-N.

All of this is a flagrant attempt to evade the Delaware forum selection clause in the License Agreement—a forum selection clause that, incredibly, USAA never mentions anywhere in the text of its Texas complaint, and that it virtually ignores in its motion before this Court.

As for the May 2006 agreement (on which USAA relies for venue selection in Texas), its stated purpose was to share information "to discuss services, products, and potential project opportunities between the parties."  *See* Ex. 2 at Exhibit L ¶ 1.1.  As USAA first alleged, the parties met to determine if USAA was interested in licensing from Mitek.  *See* Ex. 2 ¶¶ 16, 19. That, of course, was the opportunity described under Section 1.1 of the May 2006 agreement.

The parties then executed the License Agreement on June 28, 2006.  *See* Ex. 1 at 6.  As noted above, it contains Delaware forum selection and choice-of-law clauses, it contains comprehensive terms governing the exchange and handling of confidential information—and it contains an express integration clause that superseded all prior contracts between the parties.  *See*

Ex. 1 ¶ 17.2.  At that point, and because courts routinely affirm such integration clauses, the prior

May 2006 agreement no longer governed any dispute that might arise between the parties.  *See*

*generally Highlands Ins. Group, Inc. v. Halliburton Co.*, 2001 WL 287485, *8 (Del. Ch. Mar.

21, 2001) (affirming integration clause).

**2.     The License Agreement Governs USAA's Contract Claim.**

The June 2006 License Agreement extinguished and replaced the prior May 2006

agreement between the parties, and rendered all obligations regarding any confidential

information the parties disclosed to one another in the course of their communications related to

the License Agreement subject to Delaware law—and a Delaware forum.  USAA's allegation

that the parties "never intended" that the contract would expire (Ex. 3 ¶ 17) must be disregarded

because it contradicts the express terms of the License Agreement.

Thus, when USAA alleged in Texas that (1) it disclosed alleged trade secrets to Mitek

starting in  May 2006, (2) when it alleged in the original Complaint that it disclosed trade secrets

to Mitek in 2007, (3) when it claims that Mitek supposedly misappropriated such information in

a January 18, 2008 patent application, and (4) when it claims that in 2011 Mitek improperly

stated in a public document that USAA licensed technology "[i]n 2006", Mitek's obligations (if

any) arose *exclusively* under the June 2006 License Agreement.  They did not arise under the

May 2006 agreement because it was extinguished—"superseded"—by the License Agreement.

The License Agreement supplanted Mitek's obligations with respect to confidential information

that USAA disclosed (if any) before or after the parties signed it.

USAA's mention of two other contracts containing Texas forum selection clauses doesn't

help USAA.  First, both the February and April 2008 contracts (Ex. 3 at Exhibits M & N) are

dated *after* USAA alleges that it disclosed alleged trade secrets to Mitek, and after USAA alleges

that Mitek incorporated alleged trade secrets into a January 18, 2008 patent application.  *See* Ex.

-11-

2 ¶¶ 18, 23, 25-26; Ex. 3 ¶¶ 17-18.  They therefore cannot possibly have governed conduct that took place earlier in time, under the June 2006 License Agreement.

In turn, both recite a narrow subject matter, neither supersedes the License Agreement, and the Texas forum selection clauses in both are explicitly limited only to the subject matter of these narrow contracts.  *See* Ex. 3 at Exhibit M ¶¶ 1.1.1, 4.1, 4.6; *id.* at Exhibit N ¶¶ 1.1.1, 4.1, 4.6.  Third, and perhaps most important, USAA did not allege that it disclosed any trade secrets to Mitek pursuant to these agreements or that Mitek misappropriated any such alleged trade secrets.  As for the April 2008 contract, USAA alleges nothing more than that the parties signed it.  *See* Ex. 3 ¶ 18 (alleging only that the contract was "signed").  These contracts have nothing to do with the parties' license-related dispute.

In its Amended Texas Complaint, USAA clumsily attempted to extend its claims about confidential information to a time period after the parties signed the February 2008 and April 2008 contracts, so that it could argue that the subsequent contracts are controlling.  But this effort failed, because its allegation about conduct in late 2011 is expressly about, and thus governed by, the License Agreement.

Specifically, USAA alleged that Mitek unlawfully made public references about USAA's 2006 license from Mitek.  *See* Ex. 3 ¶ 71, 85.  According to USAA, Mitek falsely alleged that USAA's technology contains "Mitek proprietary technology" and represented that USAA's technology is "powered by Mitek Systems."  *See id.* ¶ 85; *id.* at Exhibit Q at 15 ("In 2006, USAA became the first bank to offer RDC to its customers to use at home via a desk-top scanner powered by Mitek Systems.  In 2009, Mitek Systems also began licensing its proprietary mobile software to other technology partners.").  By these words, USAA alleges, Mitek breached the February and April 2008 contracts (but not the June 2006 License Agreement).  *See id.* ¶ 71.

But the alleged statement expressly is about the 2006 License Agreement—the only license between the parties and the only contract under which USAA was a customer of Mitek. USAA's allegation is therefore governed exclusively by whether Mitek breached Section 17.7 of the License Agreement, which bars unauthorized use of the other party's "name(s)."  *See* Ex. 1 ¶ 17.7.  By contrast, the February 2008 and April 2008 contracts were limited in scope, did not license any technology (much less "[i]n 2006"), and did not make USAA a "customer" of Mitek. *See* Ex. 3 at Exhibit M ¶ 1.1.1; *id.* at Exhibit N ¶ 1.1.1.  Neither created a new license.  Thus, the alleged Mitek statements about the parties' 2006 License Agreement can be adjudicated only under the License Agreement.

In sum, the parties extinguished their May 2006 agreement by entering into the June 2006 License Agreement and its express integration clause.  Although USAA has attempted to confuse things by filing in Texas and trying to plead around the Delaware forum selection clause, an examination of the contracts USAA mentions and the timeline of the parties' disputes shows without any doubt that the License Agreement is controlling.  USAA voluntarily gave up a Texas forum by entering the June 2006 License Agreement and thereby "supersed[ing]" "any prior understandings or agreements" between the parties.

### 3.    The License Agreement Governs USAA's Tort Claims.

Another tactic in USAA's effort to avoid Delaware was to allege a host of follow-on tort claims in the Texas action.  But these claims (trade secret misappropriation, fraud and fraudulent inducement, unjust enrichment, and unfair competition) all stem from the same contract-based allegation that Mitek misused confidential information received from USAA and incorporated it into a patent application on January 18, 2008.  *See* Ex. 3 ¶¶ 55-65, 73-82, 94-106.

All of these claims are governed by Delaware law under conflicts-of-laws principles—not Texas law—and are subject to the Delaware forum selection clause.  The starting point for this analysis is the conflict of laws between Delaware and Texas with respect to Plaintiff's trade secret-based tort claims alleged in Texas:  Delaware applies the Uniform Trade Secrets Act to tort claims alleging misappropriation of confidential information, while Texas does not.

Specifically, Delaware trade secret law conflicts with Texas trade secret law in several ways.  As one example, the UTSA allows a defendant to recover attorneys' fees for a "bad faith" trade secret claim, while Texas has no such provision.  *See* Del. Code § 6-2002.  Mitek fully intends to seek this remedy.  As a second example, Delaware follows the majority approach to UTSA preemption and thus does not permit alternative tort claims premised on allegations that a defendant misused confidential information.  Thus, USAA's tort claims for fraud, unjust enrichment, and unfair competition are UTSA-preempted and cannot be alleged under Delaware law, because they allege misuse of confidential information.  *See* Del. Code § 6-2007; *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (UTSA preemption of alternative tort claims).

In the face of a clear conflict of laws, Delaware law will apply to USAA's tort claims as a matter of law.  This is so for two reasons.  First, tort claims based on a disclosure made pursuant to a contractual confidentiality obligation follow the same choice-of-law (here, Delaware) as that spelled out in the confidentiality contract.  This makes sense, because the duty in tort to protect confidential information arises from the contract.  *See, e.g.*, *Edifecs Inc. v. TIBCO Software Inc.*, 756 F. Supp. 2d 1313, 1319 (W.D. Wash. 2010) (parties' contractual choice of law one reason the law of the trade secret and related claims should be the same); *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F. Supp. 151, 157 (W.D. Penn. 1992) (parties' choice of law clause, which was to be "construed . . . as to all matters, but not limited to, matters of validity,

-14-

construction, effect, or performance" applied to trade secret claim); *Webcraft Tech., Inc. v. McCaw*, 674 F. Supp. 1039, 1040, 1043-44 (S.D.N.Y. 1987) (where parties' contract had New Jersey choice of law, New Jersey law applied to both contract- and fiduciary duty-based claims about confidential information).

Here, the License Agreement extends not just to its "provisions," but also to "the obligations imposed" by it—including the obligation not to misuse confidential information. *See* Ex. 1 ¶¶ 15, 16.3. The Delaware choice of law thus encompasses USAA's follow-on tort claims premised on that obligation.

Second, and even if the chosen contract law (Delaware) somehow did not govern these claims, Texas law could never apply because the controlling "significant relationships" test for conflicts of law has a special meaning in trade secret cases. Indeed, in cases where the contract does not already determine the choice of law for the related tort claims, the nationwide and unanimous practice in trade secret law is that the place of the defendant's alleged misappropriation supplies the choice of law—not the plaintiff's location or place of alleged injury. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 145, Comment f (explaining why "the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts."); *see also Edifecs*, 756 F. Supp. 2d at 1319 (California law, where alleged misappropriation would have occurred, applied even though Plaintiff was based in Washington; applying the Restatement's Comment f); *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724, 739 (N.D. Tex. 2006) (Texas law applied to trade secret claim under Restatement test because alleged wrongdoing took place there, though both parties resided elsewhere); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 115 (D. Mass. 2001) (following

Restatement to hold that Massachusetts—the place of alleged wrongdoing—determined choice of law for trade secret claim); *Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.*, 753 F. Supp. 1566, 1570-71 (S.D. Fla. 1990) (same).[2]

Thus, none of USAA's arguments about the parties' contacts with Texas matter under the special Restatement test for cases like this one.  Mitek is based in California.  The location of the alleged misappropriation thus is California.  California—like Delaware—follows the UTSA and has the same rules as Delaware regarding attorneys' fees and preemption of alternative tort claims set forth above—and thus has the same conflict of law with Texas.  There is no scenario under which Texas law could possibly apply.  USAA's tort claims alleged in the Texas action therefore cannot provide an independent basis to dismiss or transfer this action.

### D.    "First to File" Does Not Apply to Anticipatory Actions.

USAA bases most of its motion on the "first to file" rule, and argues in simplistic fashion that it filed first and nothing can overcome that prior filing.  But the "first to file" rule does not apply to anticipatory actions, where a potential defendant rushes to file first in advance of the true plaintiff's lawsuit.  This makes sense, because the filing of a declaratory judgment action deprives the true plaintiff of its choice of forum and incentivizes forum-shopping.

For that reason, courts decline to apply the "first filed" concept when the true defendant rushes to file a declaratory judgment action.  *See EEOC v. University of Penn.*, 850 F.2d 969,

---

[2] Other cases applying this rule include *Magnum Defense, Inc. v. Harbour Group Ltd.*, 248 F. Supp. 2d 64, 69 (D.R.I. 2003) (in case with no contract between parties, applying Rhode Island UTSA to trade secret claim because alleged wrongdoing took place there); *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F. Supp. 1301, 1305 (D. Nev. 1982) (in absence of contract between parties, applying California law to trade secret claim because "[t]hat is the state where any disclosure or use of Plaintiff's trade secrets would be taking place."); *see also Clorox v. Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954, 966 (E.D. Wisc. 2009) (same result in non-Restatement jurisdiction:  court applied law of place of alleged misappropriation rather than plaintiff's Wisconsin location).

976 (3d Cir. 1988) (noting that courts routinely reject the "first to file" rule for anticipatory lawsuits); *Paragon Indus., LP v. Denver Glass Machinery, Inc.*, 2008 WL 3890495, *4 (N.D. Tex. Aug. 22, 2008) (same; "[o]ne well-recognized exception is when a party files a declaratory judgment action, in anticipation of suit by its adversary.  Anticipatory suits 'deprive a potential plaintiff of his choice of forum, [and are] also one of the compelling circumstances courts cite when declining to apply the first-filed rule.'"); *909 Corp v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990) ("The Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum.").[3]

Here, USAA admits that Mitek asserted patent rights and breach of the parties' License Agreement in pre-lawsuit communications.  *See* Ex. 2 ¶¶ 8-14, 31-39 (detailed descriptions of pre-lawsuit communications); Ex. 3 ¶¶ 30-32 ("For example, in March 2012, Mitek began sending USAA contentious emails accusing USAA of infringing upon Mitek's intellectual property and demanding USAA pay additional monies to Mitek to obtain new licenses to continue use of its software").

USAA believed that Mitek might file suit in Delaware—the forum the parties selected in their License Agreement.  It attempted to undermine that chosen forum to try to obtain a hometown jury by (1) filing anticipatory, declaratory judgment claims on the patent issues; (2) attempting to concoct a basis for a Texas venue by asserting contract and tort claims that—as Mitek has set forth in detail—are governed by Delaware law and the parties' chosen Delaware

---

[3] USAA's attempt to distinguish *EEOC*– where the litigant tried to get in front of an imminent subpoena – is unconvincing.  Here, Mitek's pre-lawsuit assertion of its patent and contract rights shows that USAA "decided to preempt an inevitable" action by commencing suit in what USAA "perceived as a more favorable forum."  *EEOC*, 850 F.2d at 974.

forum, not by Texas law or a Texas forum.  Moreover, USAA's state law claims are entirely a *defense* to Mitek's patent infringement claims, because USAA seeks to undermine the validity of Mitek's patents by asserting that they are premised on USAA's confidential information.

Because the Texas action is plainly an anticipatory, declaratory relief action filed solely to try to obtain a hometown jury and to deprive Mitek (the true plaintiff) of the correct forum, the "first to file" rule does not provide any basis for dismissing or transferring this action.

### E.    "First to File" Does Not Apply to Improperly Venued Actions.

The "first to file" rule also does not apply because the controlling forum selection clause mandates litigation in Delaware.  Courts do not apply the "first to file" concept where the first-filed action is filed in a forum other than the parties' chosen forum.  Rather, courts dismiss improperly venued lawsuits even if they are filed first.  *See*, *e.g.*, *National Biodiesel Bd. v. Futurefuel Chem. Co.*, 647 F. Supp. 2d 1074, 1078 (S.D. Iowa 2009) (rejecting "first to file" concept where party filed first in court different than contract's forum selection clause); *Megadance USA Corp. v. Knipp*, 623 F. Supp. 2d 146, 149 (D. Mass. 2009) ("It is improper for a party to invoke the first filed doctrine in the face of a clearly articulated forum selection clause in the contract."); *Caudill Seed & Warehouse Co., Inc. v. Brassica Protection Prod., LLC*, 552 F. Supp. 2d 658, 662 (W.D. Ky. 2008) (granting motion to transfer; rejecting "first to file" concept "because the forum-selection clause covers the present action regardless of who files first.").

Here, USAA cannot claim the "first to file" rule as cover for breaching the License Agreement's forum selection clause.

### F.    The Case Law Undermines USAA's Convenience Argument.

Finally, USAA also argues that this case should be dismissed because it would be more convenient for USAA to litigate at home.  USAA barely conceals its goal of a jury advantage in

San Antonio when it argues that it "conducts its business there, ***serves the community there***, and designs and tests the accused systems there."  *See* Motion at 8 (emphasis added).

No authority supports these arguments.  First, there is no authority for the proposition that litigating where one "serves the community"—*i.e.*, where a party hopes to get a favorable result from jurors who do business with that party—is a valid basis to transfer a case away from a contractually agreed-to forum.

Second, USAA's arguments about convenience with respect to the location of evidence are outdated.  Courts reject them as a basis to transfer a case.  *See CentiMark Corp. v. Jacobsen*, 2011 WL 6000719, *7 (W.D.Pa. Nov. 30, 2011) ("In short, whether the litigation proceeds in Pennsylvania or in Georgia, someone is going to have to travel somewhere. We agree with CentiMark that teleconferencing, video-depositions, and electronic filing are now ubiquitous. Thus we find this factor has taken on less importance than it might have been given twenty years ago."); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001) ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles."); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL 1617186, at *3 (D. Del. 2001) ("Convenience of the parties is a somewhat archaic notion in the world today. Advances in technology have significantly lessened the burden of litigating in a distant district. "These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded...and have lowered the cost of moving that information from one place to another." (quoting *Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215, 218 (D.Del.1993)).   USAA's one-sided, self-serving "convenience" argument is not a basis to dismiss this action.

## VI.    CONCLUSION

USAA should be held to its contractual promise to litigate in Delaware.  For all of the

reasons set forth above, Plaintiff Mitek respectfully requests that the Court deny Defendant

USAA's motion to dismiss or transfer this action.

Dated:  May 7, 2012

By:       */s/  Richard K. Herrmann*
Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com

*Pro Hac Vice:*

M. Craig Tyler, TX State Bar No. 00794762
ctyler@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas 78746-5546
Telephone:     512-338-5400

James C. Yoon, CA State Bar No. 177155
jyoon@wsgr.com
Ryan Smith, CA State Bar No. 229323
rsmith@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:     650-493-9300

Charles Tait Graves, CA State Bar No. 197923
tgraves@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone:     415-947-2000

**ATTORNEYS FOR PLAINTIFF
MITEK SYSTEMS, INC.**