IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MITEK SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-462 GMS |
| ) | |
| UNITED SERVICES AUTOMOBILE ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

### I. **INTRODUCTION**

On March 29, 2012, United Services Automobile Association ("USAA") filed a complaint in the Western District of Texas ("the Texas action") seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of five United States Patents.[1] USAA also alleged, *inter alia*, trade secret misappropriation, breach of confidentiality agreements, and fraud. On April 12, 2012, Mitek Systems, Inc. ("Mitek") filed the present suit in this district alleging that USAA infringed the same five patents at issue in the Texas action and breached a 2006 licensing agreement ("License Agreement"). (D.I. 1.) USAA then filed a motion to dismiss this case, or in the alternative, to transfer it to the Western District of Texas. (D.I. 6.) On May 23, 2012, the Western District of Texas stayed the Texas action until this court decided the issue of

---

[1] *See United Services Automobile Association v. Mitek Systems, Inc.*, Civil Action No. SA-12-CA-282-FB (W.D. Tex.).

substantial overlap.[2]

Presently before the court is USAA's motion to dismiss Mitek's complaint or, in the alternative, transfer the infringement claims. For the reasons that follow, the court will grant USAA's motion and transfer the entire action, including the breach of contract claim, to the Western District of Texas.

## II. BACKGROUND

Mitek is a Delaware corporation with its principal place of business in California. (D.I. 1 at ¶ 41.) USAA is a reciprocal inter-insurance exchange and unincorporated association with its principal place of business in Texas. (D.I. 7 at 1.)

Under the terms of the June 2006 License Agreement, Mitek licensed certain technology to USAA. (D.I. 1 at ¶ 8.) The technology included in the License Agreement relates to the remote depositing of checks and encompasses the patents at issue here and in the Texas action. (D.I. 9 at 7–8.) The License Agreement contained a forum selection clause, stating: "[A]ny suit or action filed to enforce or contest any provision of this Agreement, or the obligations imposed, shall be brought and prosecuted in a court of competent jurisdiction sitting in the State of Delaware." (*Id.* at 2–3.) It also contained a Delaware choice of law clause. (*Id.* at 3).

## III. DISCUSSION

The court will first discuss the general applicability of the "first-filed" rule to this action

---

[2] Under Fifth Circuit law, if the second-filed court finds a "likelihood of substantial overlap," the second-filed court should transfer its case to the first-filed court. *Cadle Co. v. Whataburger, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999). While courts in the Third Circuit do not employ this language as consistently, the "substantial overlap" inquiry may be viewed as the initial step in determining whether the first-filed doctrine applies—asking whether the two actions do, in fact, arise from common subject matter. *See e.g., Pittsburgh Logistics Sys. v. C.R. Eng., Inc.*, 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009). The court will perform this analysis

2

as well as the potential exceptions to the first-filed rule presented by the License Agreement's forum selection clause and the arguably "anticipatory" nature of the Texas action. The court next will consider the propriety of transfer pursuant to 28 U.S.C. § 1404(a).

A.  The "First-Filed" Rule

As described above, the patent infringement action before this court addresses the same patents at issue in an earlier declaratory judgment action filed in the Western District of Texas. Under Federal Circuit law, "the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."[3] *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *see also Corixa Corp. v. IDEC Pharms. Corp.*, No. 01-615-GMS, 2002 U.S. Dist. LEXIS 2980, at *3–4 (D. Del. Feb. 25, 2002). The first-filed doctrine serves comity as well as judicial and litigant economy by combining all disputes arising from common subject matter in a single lawsuit, rather than allowing parallel cases to proceed separately. *Corixa Corp.*, 2002 U.S. Dist. LEXIS 2980, at *4.

It is not necessary that the two cases involve the exact same claims or that they are so-called "mirror-image" cases. *See id.*; *Sonion Nederland BV v. Asius Tech. LLC*, No. 11-67-RBK, 2011 U.S. Dist. LEXIS 133221, at *11–12 (D. Del. Nov. 18, 2011). Indeed, the doctrine has been found to apply where the first-filed case sought a declaratory judgment of non-infringement

---

below, albeit employing somewhat different language.

[3] The application of the first-filed rule to such a situation is controlled by the law of the Federal Circuit. *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995) ("The proper relationship between an action under this act for a declaration of patent rights and a later-filed infringement suit triggers this court's special responsibility to foster national uniformity in patent practice; we do not defer to the procedural rules of other circuits."); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).

and the later-filed case was framed as a breach of contract action arising from alleged violations of an agreement relating to the same technology at issue in the earlier infringement case. *Sonion Nederland* BV, 2011 U.S. Dist. LEXIS 133221, at *11–12. Here, as in *Sonion Nederland BV*, "it is clear that the focus of each case is the intellectual property rights related to [the agreement between the parties]" despite the fact that separate state law claims have also been joined in each action.[4] *Id.* at *12. Moreover, unlike many of the scenarios where courts have declined to apply the first-filed doctrine, this matter and the Texas action share the same parties. *See id.* at *11. Thus, as an initial matter, it would seem the first-filed doctrine should apply here absent an exception to that rule or circumstances indicating that judicial economy or the interests of justice dictate otherwise. *Fuisz Pharma v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 U.S. Dist. LEXIS 69835, at *20–22 (D. Del. May 18, 2012), *recommendation accepted*, 2012 U.S. Dist. LEXIS 79156 (D. Del. June 7, 2012).

USAA argues that no such exceptions apply and that the present case should be transferred to the Western District of Texas, as the Texas action was commenced fourteen days before this case. Mitek contends that the first-filed rule is inapplicable due to the License Agreement's forum selection clause and the possibly "anticipatory" nature of the Texas action. The court will address each of Mitek's arguments in turn.

    1.    Forum Selection Clause

As an initial matter, Mitek argues that the License Agreement's forum selection clause applies to "all of the parties' disputes," including the various infringement and non-infringement

---

[4] While the record is not entirely clear on this point, both parties appear to agree that the patents at issue in the infringement disputes relate to the same technology covered by the License Agreement and thus at issue in Mitek's breach of contract claim. (D.I. 9 at 7–8.)

4

claims. (D.I. 9 at 7.) USAA contests this point, insisting that most of the parties' claims and defenses arise under certain Confidentiality Agreements entered into both before and after the License Agreement. (D.I. 13 at 7.) These Confidentiality Agreements apparently mandate venue in Texas. (*See id.*) The parties' devote a significant amount of their briefing to this issue, but for the moment the court will assume that the 2006 License Agreement, with its Delaware forum selection clause, was not superseded by the later Confidentiality Agreement and *does* control here.

Mitek argues that the presence of the clause defeats the ordinary application of the first-filed rule and that "[c]ourts do not apply the 'first to file' concept where the first-filed action is filed in a forum other than the parties' chosen forum." (D.I. 9 at 18.) Mitek has failed, however, to provide any controlling authority for this proposition. Indeed, this court has previously observed that forum selection clauses are not enforced when they violate a strong public policy of the forum and that such public policy concerns are actually implicated in the first-filed context. *See Freedom Mortg. Corp. v. Irwin Fin. Corp.*, No. 08-146-GMS, 2009 U.S. Dist. LEXIS 24208, at *17–18 (D. Del. Mar. 23, 2009). Specifically, "enforcement of the Delaware forum selection clause would violate Delaware's public policies promoting judicial efficiency and comity served by the first-filed rule." *Id.* at *18. If both the present case and the Texas action go forward, the potential for "conflicting results, confusion, expense, and waste of judicial resources" would undermine judicial efficiency. *Id.* Given these public policy concerns, the court will not enforce the Delaware forum selection clause of the License Agreement, and it will not preclude the application of the first-filed doctrine.

        2.      Anticipatory Nature of Texas Action

5

Mitek next claims another exception to the first-filed rule, arguing that the Texas action was wrongfully filed by USAA in anticipation of Mitek's suit. (D.I. 9 at 16.) USAA responds that declaratory judgment actions are always, by their nature, "anticipatory" and that this narrow exception to the first-filed rule only applies where the earlier action was spurred by "specific, concrete indications that a suit by the defendant was imminent." (D.I. 13 at 4–5.) USAA contends that Mitek's pre-lawsuit communications, indicating that USAA was operating beyond the scope of the Licensing Agreement and accusing USAA of infringement, simply did not rise to the level of specific, concrete indications of an imminent suit. (*Id.*)

While Mitek is correct that a court may consider the bad faith or anticipatory nature of a declaratory judgment action as a factor in determining whether an exception to the first-filed rule is applicable, the court will not find such an exception here for at least two reasons. First, it is not clear that the Texas action was, in fact, anticipatory. As suggested by USAA, "[a] suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Pittsburgh Logistics Sys. v. C.R. Eng., Inc.*, 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009) (quoting *Intersearch Worldwide v. Intersearch Grp.*, 544 F. Supp. 2d 949, 960 (N.D. Cal. 2008) ). While Mitek notes that it directly accused USAA of infringing the patents, (D.I. 1 at ¶ 21.), accusations alone are not the same as actual threats of litigation. Indeed, Mitek acknowledges that its accusations were followed not by threats that it would file this suit but rather by demands that USAA make additional payment in order to obtain new licenses. (*Id.*)

Moreover, even if the court were to find that the filing of the Texas action was anticipatory, that determination alone would not preclude application of the first-filed rule. The

6

anticipatory nature of an earlier declaratory judgment action will not destroy its priority unless additional "convenience factors" counseling a departure from the first-filed rule are also present. *See Elecs. For Imaging v. Coyle*, 394 F.3d 1341, 1347–48 (Fed. Cir. 2005) ("[W]e have endorsed [the intent to preempt an infringement suit] as merely one factor in the analysis. Other factors include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest."); *Serco Servs. Co.*, 51 F.3d at 1040; *Matsushita Battery Indus. v. Energy Conversion Devices*, No. 96-101-SLR, 1996 U.S. Dist. LEXIS 8153, at *10–11 (D. Del. Apr. 23, 1996) (declining to dismiss or transfer first-filed declaratory judgment action commenced after "plaintiffs received a letter from defendants explicitly threatening imminent legal action" in the absence of other factors). As described below, these convenience factors are either not present in this case or actually weigh in favor of granting USAA's motion to transfer.[5]

Given the information before it, the court concludes that allowing both cases to go forward would run counter to the rationale that underlies the first-filed doctrine. No "considerations of judicial and litigant economy, and the just and effective disposition of disputes" are presented here to justify a departure from the ordinary rule favoring the forum of

---

[5] In a case concerning whether *jurisdiction* existed over a first-filed declaratory judgment action, the Federal Circuit observed that the district court court must consider these "convenience factors" and noted that the analysis of those factors is "basically the same as a transfer action under § 1404(a)." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 905 (Fed. Cir. 2008). Thus, "[c]onsideration of these factors mirrors the analysis performed by district courts in determining whether to transfer venue." *Ivoclar Vivadent AG v. 3M Co.*, No. 11-1183-GMS-SRF, 2012 U.S. Dist. LEXIS 86934, at *9 (D. Del. June 22, 2012). Rather than consider the convenience factors here, the court will do so below in its discussion of transfer pursuant to 28 U.S.C. § 1404(a).

7

the first-filed action. *Genentech, Inc.*, 998 F.2d at 937. Deference should be paid to the earlier filing in the Western District of Texas.

B. Transfer Pursuant to 28 U.S.C. § 1404(a)

This court has previously held that transfer pursuant to 28 U.S.C. § 1404(a) may be proper where the first-filed doctrine applies. *See Freedom Mortg. Corp.*, 2009 U.S. Dist. LEXIS 24208, at *14; *Bank of America, N.A. v. S.I.P. Assets*, No. 07-159-GMS, 2007 U.S. Dist. LEXIS 67107 (D. Del. Sept. 11, 2007). Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice," the court may transfer this action to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).[6] The defendant, USAA, bears the burden of demonstrating that transfer is appropriate. *See id.* at 879–80; *Ivoclar Vivadent AG v. 3M Co.*, No. 11-1183-GMS-SRF, 2012 U.S. Dist. LEXIS 86934, at *22 (D. Del. June 22, 2012).

Section 1404(a) sets forth a two-step transfer inquiry. The court must first ask "whether this action could have been brought in the proposed transferee venue" and then determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Fuisz Pharma*, 2012 U.S. Dist. LEXIS 69835, at *28–29, 31 (quoting *Jumara*, 55 F.3d at 879). The party seeking transfer bears the burden at each step. *Id.* at *29–30.

---

[6] The law of the Third Circuit governs this court's decision on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to §

8

### 1. Propriety of the transferee venue

Section 1404(a) provides that an action may be transferred to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Accordingly, the court may only order transfer to the Western District of Texas if that district court would have had proper personal jurisdiction, subject matter jurisdiction, and venue. 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

Had Mitek brought its claims in the Western District of Texas, that court would have personal jurisdiction over defendant USAA under Rule 4 of the Federal Rules of Civil Procedure, since USAA is headquartered in San Antonio. Fed. R. Civ. P. 4(k). Even without Rule 4, the personal jurisdiction requirement would be satisfied, as the Texas action and this case involve the same two parties and share the same nexus—the alleged infringement of Mitek's patents. As such, Mitek could have brought its infringement claims and breach of contract claim as counterclaims in the Texas action, Fed. R. Civ. P. 13, and "the courts reason that, at the time the retaliatory action was filed, that action 'might have been brought' in the transferee district . . . because the plaintiff . . . had the right to raise the subject matter of its action as a counterclaim in the pending action in the transferee district." 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[bd] (3d ed. 2012). If Mitek had brought this action in Texas, subject matter jurisdiction would have existed, as it does here, under 28 U.S.C. §§ 1331, 1338(a), and 1367. Finally, venue is proper under 28 U.S.C. §§ 1391(b), 1391(c), and 1400.

### 2. *Jumara* factors

Having determined that this action "might have been brought" in the Western District of

---

1404(a), we apply the law of the regional circuit . . . .").

Texas, the court now turns to the second step of the § 1404(a) inquiry—balancing considerations of convenience and fairness. In performing this analysis, the Third Circuit has instructed courts to look to the various private and public interests protected by § 1404 rather than to any "definitive formula." *Jumara*, 55 F.3d at 879. The private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court will consider each of these *Jumara* factors in turn.

a. Private interest factors

The first two private interest factors are the plaintiff and defendant's choices of forum. While the plaintiff's selected forum is certainly a significant element in the transfer analysis, the Federal Circuit, applying Third Circuit law, has cautioned that it is not "effectively dispositive." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). Moreover, the

10

Federal Circuit has instructed that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *Id.* Though Mitek has chosen to litigate in Delaware, its state of incorporation, and this decision must be accorded some deference in the § 1404(a) analysis, *see Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011) ("Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."); *Intellectual Ventures I v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012) ("The Court agrees with those cases that include a corporate entity's state of incorporation as part of its 'home turf.'"), the fact that Delaware is not home to Mitek's principal place of business reduces somewhat the weight this factor is accorded.

On the other hand, USAA first filed a suit relating to the same subject matter as this action in Texas, where it maintains its principal place of business. This fact weighs in favor of transfer.

*Jumara* next instructs that the court consider whether the claims arose elsewhere. "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis v. Precision Biosciences*, 2012 U.S. Dist. LEXIS 61868, at *15 (quoting 35 U.S.C. § 271(a)). Though the parties do not address this point directly, USAA does note that the mobile depositing application at issue is used by members "all over the globe." (D.I. 7 at 2.) It is not unreasonable to presume that USAA sells this product to members located in Delaware as well as in Texas, and infringement therefore may have occurred in both districts. It has been recognized, however, that "[t]o some extent, the claims ar[i]se where the allegedly infringing

11

products [a]re designed and manufactured." *Wacoh Co. v. Kionix Inc.*, 2012 U.S. Dist. LEXIS 2166, at *10 (D. Del. Jan. 9, 2012). While the infringement possibly took place in both districts, the Western District of Texas has a further link to the claims, as the allegedly infringing application was designed, tested, and operated there. (D.I. 7 at 2, 8.) This factor weighs in favor of transfer.

The fourth private interest *Jumara* factor is the "convenience of the parties as indicated by their relative physical and financial condition." In considering this particular factor, courts have looked to several elements, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Fuisz Pharma*, 2012 U.S. Dist. LEXIS 69835, at *41. USAA argues that its location in San Antonio and Mitek's location in San Diego render the Western District of Texas a more convenient forum. (D.I. 7 at 10). Mitek does not directly dispute this point, and the court is inclined to agree with USAA that simply on the basis of relative distance Texas appears more convenient. This factor weighs in favor of transfer.

The court next considers "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. There is nothing in the record to suggest that necessary witnesses will be unavailable in one forum or the other. This factor is neutral.

Finally, the court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused

12

infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). Thus, USAA argues that this factor weighs in favor of transfer, as "a substantial number of . . . corporate documents reside within the Western District of Texas. (D.I. 7 at 10.) Mitek counters that this particular convenience factor is outdated given the ease with which documents can be stored and transmitted today. (D.I. 9 at 19.) Indeed, courts have recognized this truth and accordingly given this factor little weight. *See e.g.*, *Fuisz Pharma*, 2012 U.S. Dist. LEXIS 69835, at *49–50. The court, however, may not wholly ignore this factor, s*ee In re Link_A_Media Devices Corp.*, 662 F.3d at 1224, and therefore finds that it weighs slightly in favor of transfer.

          b.    Public interest factors

The first public interest factor is the "enforceability of judgment." Neither party has placed this factor in dispute, and there appears to be no reason why the decision of either court would be denied full faith and credit. This factor is neutral.

*Jumara* next asks the court to weigh "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Courts have traditionally regarded the existence of related lawsuits in one of the fora being examined as such a "practical consideration." *See, e.g., Intellectual Ventures I v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012); *see also Ivoclar Vivadent AG*, 2012 U.S. Dist. LEXIS 86934, at *40 (D. Del. June 22, 2012); *Fuisz Pharma*, 2012 U.S. Dist. LEXIS 69835, at *52–53. As explained above, the case at bar and the Texas action share common subject matter. While they are not "mirror-image" cases, they do overlap, particularly with regard to the infringement disputes. Allowing

13

this case to continue would invite the risk of inconsistent judgments and would undermine prudential concerns. This factor, however, is somewhat mitigated by the Texas court's recent decision to stay its proceedings, which reduces the inconsistency dangers posed by simultaneous, parallel litigation. This factor weighs slightly in favor of transfer.

The court will also consider the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Neither side has argued that this factor is relevant here, and the court does not believe it weighs in either direction. Accordingly, this factor is neutral.

The court is also instructed to account for "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. This factor is typically neutral in the context of patent litigation, as "patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). However, the court recognizes that a particularly local interest may arise in the fora where the alleged infringement took place (as discussed above, possibly both Delaware and Texas) and where the alleged infringer engaged in those activities (Texas). *Fuisz Pharma*, 2012 U.S. Dist. LEXIS 69835, at *55. Additionally, "Delaware clearly has a substantial interest in addressing lawsuits brought against Delaware corporations," such as Mitek. *Autodesk Can. Co. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009 U.S. Dist. LEXIS 89794, at *25 (D. Del. Sept. 29, 2009). While USAA has not yet raised any claims against Mitek in this action, the court believes such an interest exists here given the claims presented by USAA in the Texas action and the likelihood that they would be duplicated in Delaware, were this case to move forward. Considering the "local interest" question as a whole, the court finds that this factor is neutral.

*Jumara* instructs the court to look to the public policies of the fora. Neither party, however, has addressed this issue, and, since this is a patent case implicating federal law and policy, the court finds that this factor is largely irrelevant. *See Ivoclar Vivadent AG*, 2012 U.S. Dist. LEXIS 86934, at *42. The public policy factor is neutral.

Finally, the court looks to the "familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879–80. The Federal Circuit has observed that "[p]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). Thus, if this were only an infringement action, this factor would be neutral. Mitek, however, has also raised a breach of contract claim, which will possibly be governed by Delaware law pursuant to the License Agreement's choice of law clause. Since only one of Mitek's six claims might be controlled by the law of the state in which this court sits, this factor weighs ever so slightly against transfer.

3. Transfer Analysis Conclusion

USAA has met its burden of demonstrating that the interests of convenience and fairness strongly favor transfer. *See Jumara*, 55 F.3d at 879–80. Despite the plaintiff's choice of forum, the private interest factors, taken together, weigh overwhelmingly in favor of transfer. The public interest factors emerge about even; most are neutral, while the "practical considerations" and "familiarity of the trial judge with the applicable state law" factors pull gently in opposite directions. The neutral stance of these public interest considerations is not enough to overcome the weight of the many private interest factors recommending transfer.

Mitek argues that the forum selection clause should nevertheless govern and that "USAA

15

should be held to its contractual promise to litigate in Delaware."[7] (D.I. 9 at 20.) While it is true that a forum selection clause is "entitled to substantial consideration" in the transfer analysis, *id.* at 880, the presence of the Delaware forum selection clause does not alter the court's conclusion that transfer is appropriate under § 1404(a). As noted above, application of this clause would run counter to the public policy of promoting judicial efficiency and comity. *See Freedom Mortg. Corp.*, 2009 U.S. Dist. LEXIS 24208, at *17–18. Therefore, while the clause appears valid, it will not be enforced and may be entitled to less weight than it would usually receive in a § 1404(a) analysis. Moreover, it is clear that, even absent these public policy concerns, the presence of a forum selection clause is but one factor to be considered alongside the other § 1404(a) factors. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 31 (1988); *Jumara*, 55 F.3d at 880. Under no circumstances should such an agreement "receive dispositive weight." *Jumara*, 55 F.3d at 880. The court concludes that the Delaware forum selection clause does not outweigh the other *Jumara* factors counseling transfer under § 1404(a).

    4.    Decision Between Transfer and Dismissal

The court has determined that the first-filed rule applies to the case before it and that the Texas action is favored. Having completed the *Jumara* analysis above, the court has likewise determined that transfer pursuant to 28 U.S.C. 1404(a) is proper. It has been recognized, however, that dismissal of the later-filed suit is also an option in a first-filed scenario. *See e.g., Vygon v. Rymed. Tech., Inc.*, No. 08-172-GMS, 2009 U.S. Dist. LEXIS 31288 (D. Del. Mar. 31, 2009); *Remy, Inc. v. CIF Licensing*, No. 06-785-GMS/MPT, 2008 U.S. Dist. LEXIS 44546 (D.

---

[7] The court continues to assume for the purpose of this section that the License Agreement's forum selection clause does control Mitek's claims. As discussed above, the parties' sharply disagree as to this point.

16

Del. June 9, 2008). The question therefore remains whether this case should be transferred or dismissed.

While USAA sought transfer only in the alternative, the court finds that to be the more appropriate course given how strongly the *Jumara* factors weigh in its favor. Moreover, Mitek has joined a breach of contract claim to its five infringement claims, extending the scope of the present litigation as compared to the Texas declaratory judgment action. Transferring this case to the Western District of Texas will ensure that these broader charges are fully aired. *See Fuisz Pharma*, 2012 U.S. Dist. LEXIS 69835, at *59.

## IV. CONCLUSION

For the forgoing reasons, the court finds that transfer pursuant to 28 U.S.C. § 1404(a) and the first-filed doctrine is appropriate. The court will order the transfer of this action to the Western District of Texas, where a first-filed action involving the same parties and subject matter is currently pending.

Dated: August 30, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MITEK SYSTEMS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED SERVICES AUTOMOBILE )<br>ASSOCIATION, )<br>)<br>Defendant. ) | Civil Action No. 12-462 GMS |

## ORDER

At Wilmington this 30th day of August 2012, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss or, in the alternative, Transfer to the Western District of Texas (D.I. 6.) is GRANTED.

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Western District of Texas.

IT IS FURTHER ORDERED that:

3. The District Clerk is DIRECTED to send a copy of this Order to the Honorable Fred Biery, United States District Judge, Western District of Texas, at the following address:

United States District Court
655 E. Cesar E. Chavez Blvd.
San Antonio, TX 78206
Reference: *USAA v. Mitek Systems, Inc.*, Civil Action No. SA-12-CA-282-FB

Dated: August 30, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

18